UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

WILFRED C. JAMES,

        Plaintiff,

  v.

VITRAN EXPRESS, INC.,

        Defendant.

------------------------------------------------------

CASE NO. 1:11-CV-23

OPINION & ORDER
[Resolving Doc. No. 21]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this age discrimination and breach of employment contract case, Plaintiff Wilfred James sues his former employer, Defendant Vitran Express, Inc., based on incidents stemming from his termination.

James alleges in his complaint that Vitran fired him because, at age fifty-nine, he was one of the oldest and highest paid drivers. Vitran moves for summary judgment arguing that it terminated James after he intentionally punched in at the wrong pay-rate, became confrontational with a manager when asked to punch in at the right pay-rate, and later falsified his log books as part of an alleged cover-up. As to James' claim for breach of employment contract, Vitran continues, its "employee handbook" is not an employment contract. [Doc. 22.] Responding, James admits he punched in incorrectly and raised his voice to his managers while explaining why he had punched in the way he had, but denies acting confrontational or falsifying his time. The Vitran handbook is

Case No. 1:11-CV-23
Gwin, J.

unlike other employee handbooks, James continues, because it does not contain a "no contract" clause and operates to create an employment contract. [Doc. 25.]

For the reasons that follow, the Court **DENIES** Vitran's motion for summary judgment on James' age discrimination claim and **GRANTS** its motion on James' breach of contract claim.

**I. Background**

Defendant Vitran Express is a trucking company operating out of Cleveland, Ohio. Vitran hired Plaintiff Wilfred James in 1999 as a local truck driver. At the time, James was forty-nine years old. During the next ten years, James worked exclusively as a local driver making deliveries and pick-ups around Cleveland. [Doc. 25 at 3.] As a local driver, James was paid by the hour. Long-haul drivers, on the other hand, were paid by the mile. [Doc. 22 at 5.]

On June 30 and July 1, 2009, Vitran supervisor John Chmura assigned James to drive to Pittsburgh and then to Toledo, both considered long-haul routes. James' response to these assignments is disputed. James says he merely raised his voice to Chmura and said: "I'm not a road driver. I'm a city driver. I don't know how to punch in on road time." [Doc. 25 at 3, 9.] James says he then asked Chmura and the clock foreman for instruction on how to punch in as a long-haul driver; but after no one would show him what to do, he punched in as a local driver and drove the routes as requested. [Doc. 25-4 at 6.] Chmura and other supervisors at Vitran, however, say that James raised his voice in opposition and twice refused to punch in as a long-haul driver, even though he had been told how to do it previously at meetings. [Doc. 22 at 7-8; Doc. 25-21.] After driving the assigned long-haul routes, James incompletely filled out his daily route and fuel summary logs. [Doc. 22 at 9.] James did, however, write in the logs that he drove to Pittsburgh and to Toledo. [Doc. 25-15.] Vitran says this was an attempted cover-up; James responds that no one explained to

Case No. 1:11-CV-23
Gwin, J.

him how to complete the daily logs as a long-haul driver. [Doc. 22 at 9; Doc. 25 at 9.]

On July 10, 2009 Vitran fired James, citing these incidents as the reasons. [Doc. 25-9.] Against this backdrop, James brings claims alleging that: (1) Vitran discriminated against him because of his age in violation of Ohio Revised Code § 4112.14; and (2) that Vitran breached a purported employment contract based upon its 2004 employee handbook. [Doc. 1.]

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a grant of summary judgment is proper if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden to show the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). In deciding a motion for summary judgment, the Court "draws all reasonable inferences in favor of the nonmoving party." *Lenscrafters, Inc. v. Robinson*, 403 F.3d 798, 802 (6th Cir. 2005) (citations omitted).

## III. Discussion

### *A. Age Discrimination*

In the absence of direct evidence—as is the case here—a plaintiff may establish a *prima facie* case of age discrimination by showing that he: (1) was at least 40 years old at the time of the alleged discrimination; (2) suffered an adverse employment action; (3) was qualified for the position; and (4) "was either replaced by a substantially younger person, or was treated less favorably than a similarly situated employee from outside the protected class." *McElroy v. Philips Med. Sys. N. Am.,*

-3-

Case No. 1:11-CV-23
Gwin, J.

*Inc.*,127 F. App'x 161, 166 (6th Cir. 2005). Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the discharge. The burden then shifts back to the plaintiff to prove that the reasons offered by his former employer are a pretext for discrimination. *See Cichewicz v. UNOVA Indus. Auto. Sys., Inc.*, 92 F. App'x 215, 218–19 (6th Cir. 2004).

In its motion, Vitran concedes that James can satisfy the first three elements of the *prima facie* case. Vitran argues instead that James has not set forth sufficient facts to show that Vitran treated similarly-situated, younger employees better. [Doc. 22 at 12; Doc. 28 at 2.] According to Vitran, James is unlike any other Vitran employee because only James "became confrontational with a supervisor and insubordinately refused to enter the appropriate payroll codes for linehaul assignments . . . ." [Doc. 22 at 12; Doc. 28 at 2.]

To make a comparison between his treatment and that of another employee, James must show that he was similarly-situated in all relevant aspects to the comparable worker. *See Parries v. Makino, Inc.*, 148 F. App'x 291, 296 (6th Cir. 2005). In determining whether the similarly situated requirement has been satisfied, the Court focuses on whether James and the comparable: (1) were subject to the same standards; (2) engaged in misconduct of comparable seriousness; and (3) shared the same supervisor who ultimately determined what employment action would be taken. *See id.*; *Barry v. Noble Metal Processing, Inc.*, 276 F. App'x 477, 481 (6th Cir. 2008). James says that Vitran treated employees Michael Trimble, 38 years old, and Kenneth Minerd, 47 years old, better than him—that is, did not fire them—despite the fact that the comparables committed as-serious infractions, reported up-the-line to the same supervisors, and had much worse disciplinary records

Case No. 1:11-CV-23
Gwin, J.

than his own.[1]

The Court first finds that James has put forward sufficient evidence to show that comparables Trimble and Minerd were engaged in conduct of "comparable seriousness" to his own alleged misconduct. James was disciplined four times during his ten years at Vitran. Vitran's final allegation that James insubordinately refused to punch in as a long-haul driver and then tried to cover it up, which ultimately led to his termination, is the most serious. Before that incident, James was reprimanded for refusing to drive a shipment of fireworks, refusing to make a delivery to a Wal-Mart store, refusing to make a delivery to a customer for fear of low-hanging wires, and attendance issues. [Doc. 22 at 5-6.]

During that same period, however, Trimble was reprimanded a staggering twenty-two times. For instance, much like the allegations against James, in 2007 Vitran determined that Trimble "falsif[ied] company documents" when he recorded in his log that he began work an hour early. [Doc. 25-11 at 7.] And as early as 2002, Vitran identified Trimble as "not dependable or cooperative." [Doc. 25-11 at 23.] Minerd, likewise, was reprimanded six times in twelve years. As particularly relevant to this case, Minerd says in 2009 he too was told to make a long-haul delivery but, unlike James, was not told to punch in differently and was paid per hour, as usual. When he later incorrectly filled out his logs, Minerd continues, he was given an opportunity to correct the mistake, not reprimanded or fired. [Doc. 25-13.] Both Trimble and Minerd are still today employed at Vitran. Based on these facts, James has produced sufficient affirmative evidence to establish that

---

[1] To be sure, James, Trimble, and Minerd all appear to be less-than-exemplarily employees. Yet the Sixth Circuit cautions against considering the "employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case" and to focus, instead, on the plaintiff vis-à-vis the comparables. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003).

Case No. 1:11-CV-23
Gwin, J.

the younger employees with whom he compares his treatment committed infractions of comparable seriousness to the conduct for which he was discharged.

James has also presented sufficient evidence to prove that he and the comparables' cases were handled by the same ultimate decision-maker. Although Vitran changed management over time, by 2009 James and the comparables reported to the same supervisor, John Chmura; the same boss, Richard Huffman; and the same Vice President of Human Resources, Dean Kuska: the ultimate decision-maker here. [Doc. 31 at 2.] Vitran appointed Kuska to his position in October 2006. [Doc. 22-2 at 2.] Kuska made the decision to fire James, relying on his own investigation and, in part, on Chmura's and Huffman's statements. [*Id*. at 4.] Likewise, Kuska was in the same position in 2007 when Trimble was caught falsifying his time and in 2009 when Minerd was allowed to make a long-haul run on hourly pay and later correct his daily logs. [Doc. 31 at 2-3.] A reasonable jury could, therefore, find that all three employees' situations were handled by the same ultimate decision-maker. *See Barry*, 276 F. App'x at 481.

Accordingly, James has put forward sufficient evidence to create a genuine dispute at the *prima facie* stage of the Court's inquiry. This finding does not end the Court's analysis, however. The burden now shifts back to Vitran to articulate a legitimate, non-discriminatory reason for the adverse action: Vitran says James was fired after he became confrontational and raised his voice in objection to punching in as a long-haul driver, and also because he intentionally falsified his daily route and fuel summary logs to inflate his earnings. [Doc. 22 at 9.] James does not challenge the non-discriminatory nature of Vitran's stated reasons. The burden therefore is on James to put forward evidence that Vitran's stated reason was a pretext for age discrimination.

A plaintiff proves pretext by showing either: "(1) that the proffered reasons had no basis *in*

Case No. 1:11-CV-23
Gwin, J.

*fact*, (2) that the proffered reasons did not *actually* motivate the discharge, or (3) that they were *insufficient* to motivate discharge." *Espitia v. Procter & Gamble Co.*, 93 F. App'x 707, 709 (6th Cir. 2004). James makes arguments under the first and third tests.

James admits he objected to punching in as a long-haul driver, but denies getting confrontational and denies intentionally falsifying his logs. Although Vitran's briefing paints the scene as some type of altercation between James and management, the managers' notes from the time say nothing of the sort. Indeed, only one of the three managers even notes that James raised his voice. [Doc. 25-21 at 3.] Nor does the termination letter that Vitran's Vice President for Human Resources Dean Kuska prepared say anything about a confrontation with management. [Doc. 25-9.] The only mention of a "confrontation" is in Kuska's affidavit, prepared for this case. [Doc. 22-2 at 3.] Because there was no mention of a confrontation at the time, a reasonable jury could discount Kuska's current version of the events. An employer's shifting explanations for terminating an employee may support an inference of pretext. *Alexander v. The Ohio State University*, 697 F. Supp. 2d 831, 844 (S.D. Ohio 2010). That inference is appropriate here, and it negates Vitran's argument that it had an "honest belief" in the nondiscriminatory reasons it offered in firing James.

Ultimately, in this case, whether a jury chooses to believe James' or Vitran's version of events depends on the credibility of each party's witnesses, and credibility determinations are for the jury to decide. The Court thus finds that a reasonable jury viewing the evidence as a whole could find that Vitran's stated reasons for firing James are factually untrue. Furthermore, because Minerd was not reprimanded for similar conduct, it is also a jury question whether James' acts were sufficient to motivate the firing.

Accordingly, viewing the record in the light most favorable to James, the Court finds that a

Case No. 1:11-CV-23
Gwin, J.

genuine issue for trial exists as to whether Vitran's reasons for firing James are based in fact or sufficient to warrant his firing. The Court therefore **DENIES** Vitran's motion for summary judgment on this claim.

*B. Breach of Employment Contract*

Plaintiff James also alleges that Vitran breached a purported employment contract by not holding a pre-termination conference before firing him, pursuant to language in Vitran's 2004 employee handbook.[2/] [Doc. 25-5 at 17.] James claims that Vitran's handbook is an employment contract because of language in the "Associate Termination" section, which says:

> Associates are free to leave at any time, for any reason or cause, with or without notice, just as Vitran is free to terminate an associate's employment at any time, for any reason, with or without cause, and with or without notice.
>
> Although the above is legally correct, the involuntary termination of an associate should be considered a failure on our part. We spend a tremendous amount of money to hire the right people and to train and educate them, which is why we must do everything in our power to consistently apply policies. In addition, we must provide effective, timely corrective action and work with associates to prevent future recurrences of performance issues which could ultimately lead to the termination of their employment.

[*Id.* at 16.] The 2004 handbook, James continues, also overrides the at-will disclaimer in his original employment application, which states:

> I understand that this application is not, and is not intended to be, a contract of employment and that any resulting employment is for no fixed period of time and is terminable at any time and for any reason by me or Vitran Express. *I further understand that statements which may be contained in policies, practices, or other material do not create any guarantee of employment . . . .*

[Doc. 22 at 18 (emphasis added).]

---

[2/] Vitran says that the 2004 employee handbook is outdated and was replaced in 2006. The Court need not resolve that dispute, however, because even assuming the 2004 handbook was in effect, James' claim must fail.

-8-

Case No. 1:11-CV-23
Gwin, J.

The Court disagrees that one sentence in Vitran's 2004 employee handbook altered the at-will status of James' employment and finds that James has failed to put forward sufficient evidence to show he had a contractual right to pre-termination procedure. Unless otherwise agreed, employment relationships in Ohio are terminable at-will by either party. *Wright v. Honda of Am. Mfg., Inc.*, 653 N.E.2d 381, 384 (Ohio 1995). "[A]n employee handbook may provide the terms and conditions of an at-will employment relationship . . . if the employer and employee manifest an intention to be bound by the handbook provisions." *Finsterwald-Maiden v. AAA S. Cent. Ohio*, 685 N.E.2d 786, 789 (Ohio Ct. App. 1996). Absent mutual assent to be bound, however, "the handbook is simply a unilateral statement of rules and policies that creates no obligation or rights." *Id*.

Here, both the original application (statements in policies and other materials "do not create any guarantee of employment") and employee handbook ("free to terminate . . . without notice") evidence Vitran's intention not to be bound to its stated disciplinary procedures. And because Vitran's at-will disclaimers are unambiguous, the statement "[a]lthough the above is legally correct, the involuntary termination of an associate should be considered a failure on our part" is nothing more than a unilateral statement of Vitran's internal policy that creates no contractual liability. Thus, because James presents no other evidence to establish Vitran's intent to be bound by the handbook, the Court **GRANTS** Vitran's motion for summary judgment on this claim.

### VI. Conclusion

For the foregoing reasons, the Court **DENIES** Vitran's motion for summary judgment on James' age discrimination claim and **GRANTS** its motion on James' breach of contract claim. The

Case No. 1:11-CV-23
Gwin, J.

case will proceed to trial on September 19, 2011, as previously assigned.

    IT IS SO ORDERED.


Dated: August 24, 2011                    s/     *James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE